**Eugene COOK and Ruth S. Cook**
**(Co-Executors)**

v.

**The UNITED STATES.**

**No. 348–74.**

United States Court of Claims.

June 16, 1976.

James M. McHale, Washington, D. C., attorney of record, for plaintiff.

Marc J. Fink, Washington, D. C., with whom was Asst. Atty. Gen. Rex E. Lee, Washington, D. C., for defendant.

Before COWEN, Chief Judge, and DAVIS and KUNZIG, Judges.

## ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S CROSS–MOTION FOR SUMMARY JUDGMENT

KUNZIG, Judge:

In this civilian pay case plaintiffs, executors of the estate of Kenneth S. Cook, formerly employed as an Operations Research Analyst at Holloman Air Force Base, sue for Cook's back pay. In 1967, Cook was involuntarily retired from his position for mental disability. Plaintiffs bring the instant action to invalidate the retirement.

The gravamen of the complaint is that the involuntary retirement procedures followed by defendant violated Cook's constitutional rights to due process and free speech. Plaintiffs also say that the procedures contravened certain statutes and regulations. We find that the procedures comported with all legal requirements and, therefore, hold for defendant.

The problem which eventually culminated in Cook's retirement began with submission of three letters to the Commander, Office of Aerospace Research (OAR). In these letters Cook criticized the performance of his immediate superior, a LTC Clarke. The letters contained several cartoon-type drawings. The OAR responded by advising Cook to settle any disputes within the grievance system provided by the Air Force. The OAR also sent copies of Cook's letters to Clarke.

In December 1966 and January 1967, Cook underwent medical examination. The examining surgeon found no evidence of disability. Nor did the psychiatrist. However, a consulting psychologist described Cook as a "psychotic personality with paranoid tendencies." The psychologist recommended withdrawal of Cook's security clearance, coupled with a change in duty assignment. As a result, Holloman convened a Medical Board to consider Cook's case. The Board interviewed both Clarke and Cook. It ordered additional examinations which proved negative. However, the Board concluded that Cook suffered from a

"paranoid personality pattern" and suggested that he be retired for medical reasons.

The Director of Base Medical Services approved the Board's findings despite Cook's submission of additional reports from two doctors and several character references. On May 16, 1967, the Base instituted involuntary retirement proceedings against Cook. After the requisite administrative determinations and appeals Cook was involuntarily retired. Cook then took his case to the United States District Court for the District of Columbia. Judge William B. Jones (now Chief Judge) granted the Government's motion for summary judgment. Cook died during the pendency of an appeal to the D.C. Circuit and the case was dismissed as moot without prejudice to the executors to bring an appropriate action in this court.

Plaintiffs' motion for summary judgment seeks a determination that Cook's involuntary retirement proceedings were invalid. The attack centers on the proceedings before the Medical Board at Holloman Air Force Base. Plaintiffs say that there is sufficient error in the administrative determinations to reverse the actions taken by the CSC and the Air Force. The atmosphere of reprisal against Cook, the failure to consider evidence favorable to him, and the use of "tainted evidence" all distort the pattern of the retirement process, plaintiffs contend.

Specifically, plaintiffs contest: (1) the composition of the Medical Board, (2) the adequacy of notice given to Cook of the adverse proceedings, (3) defendant's failure to afford Cook the right to counsel and cross-examination at the Board hearings, (4) the effect on Cook's free speech right caused by defendant's actions against Cook and (5) the CSC's arbitrary misuse of its discretion.

Upon review of the motions, briefs and pleadings, in addition to the CSC record, we find no reversible error in the involuntary retirement proceedings. We, therefore, deny plaintiff's motion for summary judgment and grant defendant's cross-motion.

■ First, the Medical Board of which plaintiffs complain, was properly constituted. Plaintiffs say the Board was invalid because it included a consulting psychologist who was not a Medical Corps officer. The Air Force Manual 168–4(b) provides in part:

Appropriate Members. Regulations require that personnel appointed to a medical board will be "medical officers." *This term includes medical officers.* \* \* \* *and appointed consultants.* \* \* \*

As a consulting psychologist at Holloman AFB, the Medical Board member of which plaintiffs complain was correctly appointed under the regulations. The Board included no unqualified officers.

■ Second, plaintiff properly received all notice required by the Regulations precedent to the adverse action against him. Air Force Regulation 40–752, ¶ 5(a), specifically provides notice requirements:

The date of the medical determination must be not more than 30 days before the date of the notice of the proposed adverse action.

Plaintiffs confuse the functions of the Medical Board and the CSC. The purpose of the Board is to evaluate plaintiff's condition and make recommendations to the Air Force. The convening of the Board is not, in and of itself, an adverse action. The adverse action is the involuntary retirement proceeding before the CSC. Plaintiffs do not allege that Cook failed to receive proper notice of the CSC proceedings. Instead, they complain that no written notice was given to plaintiff prior to the Medical Board sessions. However, the Regulations provide no specific notice requirement for Board determinations. Plaintiffs would transpose the 30 day requirement to the Medical Board setting but there is no authority for this. Even if some form of notice is required, the record shows that Cook must have received it for he did appear before the Board. In short, plaintiffs fail to demonstrate that defendant violated notice requirements.

■ Third, defendant violated no procedural rights guaranteed to Cook by failing

to provide counsel and an opportunity to cross-examine Board witnesses. Plaintiffs argue that the refusal to grant Cook his right to counsel and cross-examination violated both regulations and the Constitution. Once again plaintiffs would confuse the nature of the Medical Board determination with the CSC action.

■ Defendant's conduct did not violate the Regulations. AFR 11–1 governs the general conduct of personnel investigations. It provides for notification of the right to counsel and cross-examination. Plaintiffs say that this Regulation *must* be applied to Medical Board proceedings. However, AFM 168–4, ¶ 16–5b governs such requirements. It states that the "principles" of AFR 11–1 are to be considered in the conduct of Medical Boards. It is permissive, not mandatory. Defendant did not violate any regulations by failing to provide Cook with the right to counsel or the opportunity to cross-examine witnesses at the Board hearing.

■ Moreover, the failure to grant Cook these rights did not violate any Constitutional right to due process. It is axiomatic that due process guarantees no particular form of procedures. *See, e. g., Mitchell v. W. T. Grant Co.,* 416 U.S. 600, 610, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974).

> The types of "liberty" and "property" protected by the Due Process Clause vary widely, and what may be required under that Clause in dealing with one set of interests which it protects may not be required in dealing with another set of interests. [*Arnett v. Kennedy,* 416 U.S. 134, 155, 94 S.Ct. 1633, 1645, 40 L.Ed.2d 15 (1974)].

In the instant case, both Cook and the Government had an identical interest in the accuracy, completeness and quality of the medical evidence presented to the Board. In sharp contrast, Cook had available and used a wide range of administrative remedies, after the Medical Board determination. Due to the exhaustive nature of these subsequent proceedings, we cannot say that a denial of trial-type safeguards at the Board constituted a denial of Cook's due process rights. *See Arnett, supra,* separate opinion of Powell and Blackmun, JJ. at 168–71; *Scroggins v. United States,* 397 F.2d 295, 298, 184 Ct.Cl. 530, 534 (1968), *cert. denied,* 393 U.S. 952, 89 S.Ct. 376, 21 L.Ed.2d 363 (1968).

■ Fourth, the facts of the instant action do not show that defendant's involuntary retirement of Cook was based on a desire to retaliate against him for the letters or to "chill" his Constitutional right to free speech. As defendant properly indicates, there is a presumption that Government officials act in good faith. *See, e. g. McGlasson v. United States,* 397 F.2d 303, 307, 184 Ct.Cl. 542, 550 (1968). Plaintiffs point to nothing in the record which would overcome this presumption. We are asked to infer an atmosphere of reprisal from a withholding of Cook's security clearance, the denial of a salary increase and the initiation of Medical Board proceedings. The inference, if any, fails to overcome the presumption. Indeed, examination of the record finds that the lone concern of the Government was Cook's health, not his desire to exercise his right to free speech. Defendant's involuntary retirement of Cook cannot be held to constitute a pretext to retaliate against him or to deny his Constitutional rights.

Finally, there is nothing in the record which points to an abuse of discretion in the administrative determination of Cook's disability. Plaintiffs say that the *CSC's* failure to investigate the "substantial accusations (or retaliation)" or to provide the opportunity for evidence to be presented at a hearing, constitutes an arbitrary abuse of discretion. Plaintiffs also attack the *Medical Board's* refusal to consider favorable medical reports and the use of "tainted evidence." However, based upon the record, the administrative determinations appear to have been correct.

■ The *CSC* properly confined its considerations to evaluation of Cook's disability. It followed all necessary procedures in concluding that Cook should be retired for disability. Given the substantial evidence

of Cook's condition and the fact that the CSC found Cook should be retired for disability, there was no need for a further evidentiary hearing on the issue of free speech retaliation.

 Nor did the *Medical Board* deliberations show any demonstrable impropriety. The Board considered evidence both favorable and unfavorable to Cook and recommended retirement. There appears in the Medical Board's record, substantial evidence of Cook's disability. Given such substantial evidence, we are not free to substitute our own judgment for that of the Board, particularly where medical questions are involved. *Cf. Scroggins, supra,* 397 F.2d at 299, 184 Ct.Cl. at 537.

Plaintiffs fail to support their allegation of administrative abuse of discretion.

In summary, based on the facts of the instant case, we find no reversible error in defendant's involuntary retirement of Cook for medical disability. The Medical Board was properly constituted, Cook received adequate notice of the Board proceedings, there was no violation of regulations or Constitutional rights in denying Cook the right to counsel or cross-examination at the Board sessions, the action did not constitute retaliation or an attempt to deny Cook his right to free speech, and there was no administrative abuse of discretion. In short, plaintiffs demonstrate no impropriety in the proceedings.

Accordingly, for the reasons stated above, plaintiffs' motion for summary judgment is denied, defendant's cross-motion for summary judgment is granted and the petition is dismissed.